3IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Meshoppen Transport, Inc.,                     :
                Petitioner                     :
                                          :

                v.                     :  No. 334 C.D. 2018
                                          :  Submitted: July 13, 2018
Workers' Compensation                     :
Appeal Board (Pfister),                     :
                Respondent                     :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT             FILED: October 17, 2018

        Meshoppen Transport, Inc. (Employer) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) that affirmed the decision of the Workers' Compensation Judge (WCJ) to grant Jean Marie Pfister's (Claimant) fatal claim petition. The sole issue before this Court is whether the Board erred in determining that Claimant's husband, Robert Pfister (Decedent), was acting in the course and scope of his employment with Employer at the time of his heart attack. Discerning no error, we affirm the Board.

        Claimant filed a fatal claim petition pursuant to the Workers' Compensation Act (Act),[1] alleging that Decedent suffered a fatal heart attack on September 23, 2015, following an Employer-required medical examination. Employer denied all allegations, and hearings were held before the WCJ.

---

[1] Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§1–1041.4, 2501–2708.

With the agreement of the parties, the WCJ bifurcated the proceeding to decide first whether Decedent was acting within the course and scope of his employment at all relevant times. The parties stipulated that Decedent worked for Employer as a truck driver and that this job required him to maintain a valid commercial driver's license. Stipulation of Facts, ¶2; Reproduced Record at 16a (R.R. __). On September 23, 2015, Decedent went to WorkWell Occupational Services (WorkWell) to undergo a medical examination for his commercial driver's license. Employer scheduled the examination for Decedent. *Id.*, ¶3; R.R. 16a.

As part of the examination, Decedent was asked to perform "vigorous exercise for one minute." *Id.*, ¶4; R.R. 17a. As a result, his heart rate went from 76 at rest to 100. WorkWell's report indicates that Decedent had a "regular heart rate post exercise." *Id.* The examination took 15 to 25 minutes.

Following the examination, Decedent drove his company truck to Dr. Edward G. Zurad's office so that Dr. Zurad could sign his driver's license paperwork. Decedent then drove to one of Employer's locations to pick up a load for delivery. As he exited his truck, Decedent fell and landed on his elbows. He reported to a co-worker that he felt dizzy and nauseous. Decedent "passed out" for a minute or two. *Id.*, ¶8; R.R. 17a. His co-workers dialed 911 but cancelled the call after Decedent insisted that "he was okay." *Id.* Decedent stated that he had not eaten breakfast and was given water and a muffin. A co-worker drove Decedent back to Dr. Zurad's office, where he collapsed and was admitted to the hospital. Decedent was diagnosed with an acute myocardial infarction, and he died two days later.

Claimant testified that Decedent did not exercise regularly. He worked over the weekend, and "[s]ometimes he'd be gone two, three weeks at a time." Notes of Testimony (N.T.), 5/23/2016, at 11-12; R.R. 54a-55a. Claimant described

2

Decedent's lifestyle as "sedentary"; he spent most of his free time at home sitting and relaxing. *Id*. at 11; R.R. 54a.

Employer presented the testimony of Patrick Musheno, its safety director. He stated that Decedent worked for Employer as an "over-the-road" truck driver for 10 to 12 years, transporting goods "anywhere in the 48 states." N.T. 7/11/2016, at 10; R.R. 68a. To do this work, Decedent was required to undergo a "[United States] Department of Transportation physical" every year. *Id*. at 18; R.R. 76a. Musheno testified that Employer scheduled and paid for the September 23, 2015, physical examination for Decedent. Employer selected WorkWell as its medical provider to conduct physical examinations for its employees and report the results to Employer. Musheno explained that Decedent was free to schedule an examination at a place and time of his choosing; however, Employer would reimburse Claimant for the cost of the examination only if it was done at WorkWell. *Id*. at 27; R.R. 85a. Musheno testified that Decedent was not paid for his time while attending the examination.

By interlocutory order of September 9, 2016, the WCJ concluded that Decedent was acting within the course and scope of his employment at the time he suffered the heart attack. By order of March 2, 2017, the WCJ granted Claimant fatal claim benefits. The WCJ found, *inter alia*, that Decedent was required as a condition of his employment to maintain a commercial driver's license. The WCJ noted that Musheno "acknowledge[d] and agree[d] that [D]ecedent was required to attend the [physical] examination at WorkWell – paid for by the [E]mployer herein – in order for the [D]ecedent to maintain his [commercial driver's] license and remain a truck driver for [E]mployer []." WCJ Decision at 5; Findings of Fact, ¶8.

3

Further, Employer scheduled the examination for Decedent.[2] Employer appealed to the Board. Affirming the WCJ's decision, the Board held that Decedent was furthering Employer's business by attending the medical examination. Employer then petitioned for this Court's review of the Board's adjudication.

On appeal,[3] Employer argues that the Board erred in concluding that Decedent's heart attack occurred during the course and scope of his employment. Decedent attended the medical examination outside his work hours, and he was not paid for his time at the examination. Citing *Reichert v. Workers' Compensation Appeal Board (Foxdale Village)*, 126 A.3d 358 (Pa. Cmwlth. 2015), Employer also observes that Decedent "could have refused to take the [] exam and opt not to continue his work as an over the road truck driver." Employer Brief at 12. Further, Decedent was free to schedule an examination with any medical provider. Employer maintains that it was the federal regulations, not Employer, that required Decedent to take the physical examination to maintain his commercial driver's license. Employer asserts that the Board and the WCJ mischaracterized Musheno's testimony in finding that Employer required Decedent to attend the examination.

To be eligible for compensation, an injured employee must establish that his injury occurred in the course of employment and that it was related thereto.

---

[2] The WCJ further found Decedent's fatal heart attack was caused by the vigorous exercise he performed during the medical examination at WorkWell. The WCJ credited the testimony of Dr. Raphael Bonita, M.D., who opined that Claimant's physical exertion during the vigorous exercise caused a plaque rupture, which led to an occlusion and caused Decedent's fatal myocardial infarction. The Board affirmed the WCJ's finding, which Employer does not challenge before this Court.

[3] This Court's review of a workers' compensation adjudication determines whether an error of law or a constitutional violation was committed or whether the findings of fact are supported by substantial, competent evidence. *Myers v. Workers' Compensation Appeal Board (University of Pennsylvania and Alexsis, Inc.)*, 782 A.2d 1108, 1110 n.1 (Pa. Cmwlth. 2001).

Section 301(c) of the Act, 77 P.S. §411.[4]  Injuries sustained by an employee while "actually engaged in the furtherance of the business or affairs of the employer" are compensable whether the injuries occurred upon the employer's premises or elsewhere.  77 P.S. §411; *Penn State University v. Workers' Compensation Appeal Board (Smith)*, 15 A.3d 949, 952 (Pa. Cmwlth. 2011).  The operative phrase "actually engaged in the furtherance of the business or affairs of the employer" is given a liberal construction.  *Southeastern Pennsylvania Transportation Authority v. Workers' Compensation Appeal Board (McDowell)*, 730 A.2d 562, 564 (Pa. Cmwlth. 1999).  Whether an employee is acting in the course of employment at the time of an injury is a question of law, which must be determined based on the findings of fact made by the WCJ.  *Id.*

When determining whether an employee is furthering an employer's business or affairs when he sustains an injury during non-work hours, we consider whether the employer encouraged the activity at issue; whether the activity furthered a specific interest of employer; and whether the activity was necessary to maintain the skills required by the employer's job.  *Pinn v. Workers' Compensation Appeal Board (Hemlock Girl Scout Council)*, 754 A.2d 40, 43 (Pa. Cmwlth. 2000).

Precedent on course and scope of employment informs our analysis.  In *Hemmler v. Workmen's Compensation Appeal Board (Clarks Summit State*

---

[4] Section 301(c) provides in pertinent part:

> The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, except as provided under subsection (f), arising in the course of his employment and related thereto….  The term "injury arising in the course of his employment," as used in this article … shall include all … injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere….

77 P.S. §411.

*Hospital)*, 569 A.2d 395 (Pa. Cmwlth. 1990), a hospital employee was injured during his lunch break while playing basketball with co-workers in a gym on the employer's premises. The evidence demonstrated that the employer encouraged its employees to participate in these physical activities to improve their health, relieve work-related stress and to promote a better mental attitude in the performance of their work. The employer posted information on the bulletin board encouraging employees to engage in sports activities, and employees regularly used the employer's gymnasium during breaks to play basketball. Based upon this evidence, this Court held that the claimant was engaged in an activity in furtherance of the employer's business or affairs, and, therefore, was in the course of his employment when he was injured.

In *Mann v. City of Philadelphia*, 563 A.2d 1284 (Pa. Cmwlth. 1989), a lifeguard employed by the city drowned while he was swimming during his lunch break in the city pool, which was closed at the time. Because the claimant was required to maintain his swimming skills for the purpose of Red Cross certification and was permitted to use the pool at the time of his drowning, this Court concluded that he was furthering the employer's interest at the time of the incident regardless of whether the swimming activity also "furthered his personal interest." *Id.* at 1287.

Here, it is undisputed that Decedent was required to undergo an annual physical examination to maintain his commercial driver's license. Musheno testified that the physical examination was necessary for Decedent to remain an interstate driver for Employer. Although Decedent was free to schedule an examination at a place and time of his choosing, Employer would pay for the examination only if done by WorkWell. Further, Musheno testified that Employer received a copy of Decedent's examination results from WorkWell. These facts show that Decedent attended the physical examination at WorkWell because Employer encouraged it so

6

that he could renew his commercial driver's license. We conclude that Decedent was engaged in an activity in furtherance of Employer's business during the physical examination at WorkWell and, therefore, the course of his employment when he had his heart attack.

Employer contends that Decedent attended the physical examination not "solely" in the furtherance of Employer's business but, rather, to allow "the [D]ecedent to continue working as a truck driver for any employer willing to hire him." Employer Brief at 13, 17. In *Mann*, 563 A.2d 1284, the lifeguard was required to meet certain physical fitness standards to maintain his Red Cross certification. Likewise, here Decedent had to attend the physical examination to maintain his commercial driver's license, which was a condition of his continued employment as an interstate truck driver. As we held in *Mann*, the relevant inquiry is whether Decedent furthered Employer's business or affairs at the time he suffered the heart attack; it is immaterial whether the activity also furthered Decedent's personal interest in continued employment. *Id.* at 1287.

Employer further argues that the Board erred by distinguishing the subject case from *Reichert*, 126 A.3d 358. In that case, the claimant was required to undergo a functional capacity evaluation to be allowed to return to work following a period of non-work-related disability. The claimant was injured during the evaluation. The Board denied the claimant workers' compensation benefits, and this Court affirmed. We stated that "an injury that arises while participating in a prerequisite for employment is only work-related insofar as the event has the potential to alter the employment relationship by allowing the claimant to return to employment, but it does not arise in the course of employment." *Reichert*, 126 A.3d at 364. Employer argues that, similar to the functional capacity evaluation,

7

Claimant's physical examination was a prerequisite for employment. Decedent did not have to take the examination if he "opt[ed] not to continue his work." Employer Brief at 12.

*Reichert* is inapposite. The claimant in *Reichert* had been out of work for a significant period of time. She was held ineligible for workers' compensation benefits because she did not prove that she was an employee at the time of her injury. We emphasized that, to be entitled to workers' compensation benefits, the claimant must prove that an employer/employee relationship exists. *Reichert*, 126 A.3d at 361. This is not an issue in the instant case. Employer does not dispute that Decedent was an active employee and had been for over a decade at the time he suffered the heart attack. Decedent took the physical examination not to "return to employment" but, rather, to remain employed as a truck driver for Employer. *Id*. at 364. We reject Employer's argument based on *Reichert*.

For all of the foregoing reasons, we affirm the Board's order.

_____
MARY HANNAH LEAVITT, President Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Meshoppen Transport, Inc., : 
                Petitioner : 
                 : 
            v. : No. 334 C.D. 2018
                 : 
Workers' Compensation : 
Appeal Board (Pfister), : 
                Respondent : 

# **O R D E R**

AND NOW, this 17th day of October, 2018, the order of the Workers' Compensation Appeal Board dated February 14, 2018, in the above-captioned matter is hereby AFFIRMED.

                             _____

                             MARY HANNAH LEAVITT, President Judge